IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| THOMAS SWAN & CO. LTD., | § § § | |
| Plaintiff, | § § | CASE NO. 2:13-cv-178-JRG |
| v. | § § | |
| FINISAR CORP. and FUJITSU NETWORK COMMUNICATIONS, INC., | § § § | |
| Defendants. | § § § | |

**OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is Finisar Corp.'s ("Finisar") Motion to Transfer Venue (Dkt. No. 20). Finisar contends that the Northern District of California (NDCA) is a more convenient forum than the Eastern District of Texas (EDTX). The Court, having considered the motion and related briefing, **DENIES** Finisar's motion to transfer venue because the balance of the private and public factors fails to demonstrate that the transferee venue is clearly more convenient.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

Thomas Swan & Co. Ltd. ("Swan") filed suit against Finisar on February 26, 2013 for infringement of four United States patents relating to wavelength selective switches used in fiber optic communications. Swan accuses the use of Liquid Crystal on Silicon (LCoS) technology in optical switching devices. Swan alleges that Finisar's Wavelength Selective Switch (WSS) products, products containing the WSS products, and Waveshaper products infringe the asserted patents.

Finisar is a Delaware corporation with its principal place of business in Sunnyvale, California and with established offices in Texas, Pennsylvania, and Australia. Finisar maintains a design and manufacturing facility in Allen, Texas. Allen is within EDTX, but Finisar avows that the Allen facility is not used to design, manufacture or sell the accused products. The parties dispute where the development of the accused products takes place, whether it is primarily in NDCA or Australia. However, they agree that the accused products are manufactured and assembled abroad. Finisar sells the accused products to various customers across the US, including several with significant facilities in EDTX. One of its customers is the co-defendant in this case, Fujitsu Network Communications, Inc. ("FNC"). FNC is a California corporation with its principal place of business at 2801 Telecom Parkway in Richardson, Texas, which is within EDTX. In addition to its direct sale customers, Finisar also employs five distributors to market and sell the accused products, one of which is Nu Horizons Electronics Corp ("Nu Horizons"). Nu Horizons has twelve domestic locations, including one in Plano, Texas, which is also within EDTX.

Swan is headquartered and operates principally in the United Kingdom. The sole inventor of the asserted patents, Melanie Holmes, resides in the UK. The two prosecuting attorneys are Timothy Meagher, who works in Massachusetts, and Bill Neobard, who is located in the UK.

Finisar filed the present motion to transfer venue on July 3, 2013. On August 26, 2013, Swan filed an amended complaint to add FNC, an alleged customer of Finisar. (*See generally* Amended Complaint, Dkt. No. 41.) FNC has since filed a Notice of Non-Objection to Finisar's Motion to Transfer Venue stating that it consents to service of process and venue in NDCA for purposes of this suit only. (Dkt. No. 80.) Since briefing was completed, both parties have also

filed Notices of Supplemental Evidence in support of their respective positions. (Dkt. No. 97 and 100.)

## III. LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors, none of which are given dispositive weight. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

3

*Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV. ANALYSIS

### A. Proper Venue

Swan does not dispute that this case could have originally been brought in the Northern District of California, so the initial threshold in this case has been met.[1]

### C. Private Interest Factors

#### i. Relative Ease of Access to Sources of Proof

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

The parties dispute what technology or product is really at the core of Swan's infringement allegations, and therefore the corresponding location of their supporting documentation. Finisar admits that relevant work on the accused products is conducted in

---

[1] FNC consents to service of process and venue in the Northern District of California (Dkt. No. 80 at 2).

multiple locations in the US and worldwide: Fremont and Sunnyvale, California; Horsham Pennsylvania; Sydney, Australia; Tel-Aviv, Israel; and Shanghai, China. However, Finisar claims that the LCoS technology is at the core of Swan's claims and the LCoS technology was originally acquired by Finisar from a company located in Fremont, California, called MicroDisplay Corporation, which is no longer in business. Finisar argues that the relevant evidence and witnesses consequently must be located in NDCA. Swan disagrees on Finisar's characterization of the accused technology and instead contends that it is accusing the entire WSS product line originally developed by an Australian company called Engana and later acquired by Finisar. Swan asserts that the bulk of the relevant documentation is stored in Finisar's Australia facilities.

Allegations against both LCoS and WSS for embodying the claimed invention appear in the Amended Complaint; hence, both are equally likely to be subject to discovery. Indeed, the discovery conducted so far reveals that the majority of Finisar employees identified by Finisar in interrogatory responses as having relevant knowledge are located in Australia. Additionally, there is no dispute that manufacture and assembly of the accused products takes place abroad – in Australia and China. The Court is persuaded that Finisar's relevant documentary evidence is located across the globe, with a predominant presence in Australia since that is the only location where some aspect of the design, development, manufacture, and assembly of the accused products takes place.

Turning to an analysis of the plaintiff's sources of proof, Swan does not dispute that it is a foreign company and its relevant documents are situated in the UK and Washington DC. Its witnesses are located in Massachusetts and the UK. Though Swan urges that these sources of

proof are more accessible in EDTX than NDCA, the difference is trivial. Accordingly, the Court assigns minimal weight to the ease of access of Swan's evidence as part of this analysis.

Swan also identified several non-party companies that are expected to have documents and witnesses relevant to Swan's inducement claims. These third-party customers of Finisar are located within or immediately adjacent to EDTX. They include Alcatel-Lucent (substantial facility in Plano, Texas with 2500 employees), Huawei (Plano, Texas location with 650 employees), Cisco (Richardson, Texas facility with 1200 employees), and Verizon (Richardson, Texas facility with 2250 employees). In addition, Finisar's customer FNC was added as a defendant in this case after the present motion was filed. Although Finisar questions Swan's motivation in adding FNC for purposes of this venue analysis, it does not allege that the joinder is improper. Accordingly, the Court must consider FNC's headquarters in Richardson, Texas as part of the venue consideration.[2] Additionally, Swan has identified Nu Horizons, one of Finisar's sales and distribution partners located in EDTX, as having information relevant to its allegations of infringement and damages.

Under § 1404(a), the movant bears the burden to clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Volkswagon II*, 545 F.3d at 315. Based on the evidence presented, there are certainly some sources of proof for the development of the LCoS technology in Finisar's California offices. On the other hand, there is also relevant evidence from co-defendant FNC, as well as numerous other non-party customers and distributors who maintain a significant presence in EDTX. Where a transfer will only shift the inconvenience from one district to another, the movant has not met its burden of persuasion. Here, the bulk of information for the development and manufacturer of the accused products, as

---

[2] Since FNC does not object to Finisar's motion transfer venue to NDCA, the Court does not assign much weight to FNC's sources of proof.

well as the knowledgeable party witnesses, are clearly located abroad in Australia. On balance, the Court finds that this factor does not weigh in favor of transfer and is, at best, neutral.

        ii.        *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

Neither NDCA nor EDTX has absolute subpoena power over all the relevant non-party or party witnesses. Finisar's relevant witnesses are concentrated in Australia and NDCA, and one is located in Denver. Finisar also has a design and manufacturing facility in Allen, Texas, though the relevance of that facility is in dispute. FNC is headquartered in EDTX and most assuredly has relevant witnesses working in those facilities. Swan's relevant witnesses are located in Massachusetts and the UK.

Among Finisar's third-party customers in EDTX, Swan has specifically identified several individuals within this Court's subpoena power who are alleged to be knowledgeable about the accused products:

- FNC's David Gutierrez
- Huawei's Xavier Orozco and Kent Jordan
- Alexander Umnov, who was formerly with FNC and is now with Huawei, and has relevant information about FNC's pre-suit knowledge of the patents-in-suit
- Glenn Wellbrock, with Verizon, who has knowledge of marketing the accused products

On the other hand, Finisar was also able to identify two ex-employees of MicroDisplay, Jean-Jacques Drolet and Carlin Vieri, who are within NDCA's subpoena powers.[3] Ultimately, and on balance, Swan has the better argument that more relevant non-party witnesses are within this Court's subpoena power. Indeed, Swan has already utilized this Court's subpoena powers to obtain documents and deposition testimony in EDTX from three of Finisar's EDTX-based customers. Considering the facts presented and the trajectory of the case thus far, Finisar has not shown that NDCA would be any better in this regard than EDTX, and the Court finds this factor to weigh against transfer.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

---

[3] Finisar also identified Sergei Yakovenko as a third party witness who lives and works in NDCA, but does not explain his relevance to this case.

The non-party witnesses identified by Swan and Finisar in the Court's discussion of the above factors show that they are spread across the country, including some in California and Texas. With respect to party witnesses, Finisar has identified both employees from its Sunnyvale offices as well as multiple employees (via interrogatory responses) from its Australia locations. Swan's willing witnesses will be traveling from the UK. FNC has not identified any of its witnesses, but many are likely to work in its Richardson headquarters. Foreign witnesses will be equally inconvenienced by traveling to NDCA as they will by traveling to EDTX. Finisar's Sunnyvale witnesses will be inconvenienced by traveling to EDTX. However, FNC's Richardson witnesses will be equally inconvenienced by traveling to NDCA. Once again, Finisar has failed to carry its burden as the movant, and the Court finds this factor is neutral as to transfer.

        *iv.*       *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011); *see also Volkswagen II,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice … [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

The Court does not find any practical problems based in judicial economy to exist here. Swan's explanation for its decision to name or not name additional Finisar customers as defendants in this suit is irrelevant to the venue consideration. Accordingly, this factor is neutral.

### D.   Public Interest Factors

Having addressed the private interest factors in the § 1404(a) transfer analysis, the Court now turns to the public interest factors. The only two factors the parties dispute are court congestion and local interest. The parties concede that the other factors are neutral.

*i.   Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. Finisar urges that the time to trial comparison between EDTX and NDCA is "speculative," and should be found to be neutral in this venue analysis. The Court agrees. Where "several relevant factors weigh in favor of [or against] transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.*

*ii.   Local interest in having localized interests decided at home*

The Court must also consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Finisar contends that NDCA has a greater localized interest in this case than EDTX because Swan is a foreign corporation, while Finisar is based in Sunnyvale, California. However, FNC is based in Richardson, Texas and likely has witnesses and evidence in EDTX, so citizens in EDTX likewise have an interest in adjudicating this dispute. On balance, this factor is neutral.

## VI. CONCLUSION

After weighing the evidence as a whole, the Court finds that this is not a situation where venue is clearly more convenient in one district over another. No factor favors transfer and all the other factors weigh against transfer or are neutral. However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). Finisar has fallen short of meeting its burden to show that transfer to NDCA would clearly be more convenient. Accordingly, Finisar's Motion to Transfer Venue (Dkt. No. 20) is **DENIED**.

**So ORDERED and SIGNED this 6th day of January, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE